**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| LINDELL HARVEY, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | :        No. 3:02CV1086(DJS) |
| | : |
| KATHY MARK and CITY OF | : |
| HARTFORD, HARTFORD PUBLIC | : |
| SCHOOLS, | : |
| | : |
| Defendants. | : |

**MEMORANDUM OF DECISION**

On June 18, 2002, plaintiff Lindell Harvey filed this action

alleging that defendants, Kathy Mark and the City of Hartford,

Hartford Public Schools, his alleged employer,[1] discriminated

against him on the basis of his sex, in violation of Title VII of

the Civil Rights Act, codified at 42 U.S.C. § 2000e et seq., and

the Equal Protection Clause of the Fourteenth Amendment to the

U.S. Constitution.[2]  On May 30, 2003, pursuant to Rule 56(b) of

the Federal Rules of Civil Procedure, defendants filed a motion

for summary judgment.  (See Dkt. # 36).  For the reasons set

forth herein, defendants' motion is **GRANTED**.

---

[1] Harvey seeks to join the State Board of Trustees for the
Hartford Public Schools as a defendant in this matter.  In a
separate order issued herewith, Harvey's motion is denied because
his substantive claims against the agents of the responsible
principal, whether it is the City of Hartford or the State Board
of Trustees for the Hartford Public Schools, lack merit.

[2] Harvey has withdrawn the Third and Fifth claims for relief
set forth in the complaint.

## I. FACTS

Since 1989 through at least the date the papers pertaining to the pending motion were filed, Mr. Lindell Harvey was a custodian in the Hartford public school system.  Ms. Kathy Mark, since 1995 through at least the date the papers pertaining to the pending motion were filed, was the Head Custodian of Bulkeley High School, which is a school in the Hartford public school system.  The City of Hartford is a municipality in the State of Connecticut.

This lawsuit concerns Harvey's tenure as Night Lead Custodian at Bulkeley High School, which began on April 28, 1997 and ended on or about August 16, 2001.  During this time, Mark supervised Harvey, who in turn supervised about nine employees during the 3:00 p.m. through 11:00 p.m. shift.  Harvey was the only supervisor present after 4:00 p.m., which is when the day shift ended.

According to Mark, Harvey's job performance began to deteriorate in 1999.  The record contains several memoranda, dated from October of 1998 through October of 2000, from Mark to Harvey relating faculty complaints and detailing problems with the manner in which Harvey was performing his duties.  On a yearly performance evaluation dated June 12, 2000, Mark noted that Harvey failed to meet expectations with respect to the quality of his work, his knowledge or expertise, and his

dependability.  On July 18, 2000, Raymond DelMonte, the Custodial
Manager for the school district, and Gerard Rivera, the Custodial
Supervisor for the school district, met with Harvey to discuss
his performance evaluation and scheduled him for re-evaluation in
thirty, sixty, and ninety day increments.

Thereafter, according to Mark, Harvey's performance did not
significantly improve.  Throughout the ninety-day re-evaluation
period, Mark continued to note that Harvey failed to meet
expectations with respect to the quality of his work, his
knowledge or expertise, and his dependability.  On February 5,
2001, DelMonte stated his dissatisfaction with Harvey's job
performance and referred Harvey to the human resources department
for disciplinary action.  On August 16, 2001, following a pre-
disciplinary hearing, Robert Stacy, the Executive Director for
Human Resources, demoted Harvey to the position of Custodian and
transferred Harvey to a different school.

## II.  DISCUSSION

Harvey alleges that defendants demoted him in violation of
Title VII of the Civil Rights Act of 1964 and the Equal
Protection Clause of the Fourteenth Amendment.  The factual basis
for Harvey's claims is that Mark treated the male custodians in
her charge, including Harvey, poorly compared to the female
custodians.  Harvey claims that Mark's criticism of his work was
unjustly harsh and was a product of her animosity towards men in

general and Harvey specifically.

## A.   STANDARD

A motion for summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Summary judgment is appropriate if, after discovery, the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "The burden is on the moving party 'to demonstrate the absence of any material factual issue genuinely in dispute.'"  American Int'l Group, Inc. v. London Am. Int'l Corp., 664 F.2d 348, 351 (2d Cir. 1981) (quoting Heyman v. Commerce & Indus. Ins. Co., 524 F.2d 1317, 1319-20 (2d Cir. 1975)).  A dispute concerning a material fact is genuine "'if evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  The court must view all inferences and ambiguities in a light most favorable to the nonmoving party.  See Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).  "Only when reasonable minds could not differ as to

the import of the evidence is summary judgment proper."  Id.

### B.  DISCRIMINATION CLAIM

Harvey alleges that defendants discriminated against him on

the basis of his sex.  Specifically, Harvey claims that Marks was

unfairly critical of his work because he is a man, and that

Mark's critical view of his job performance was adopted by those

who ultimately disciplined him.  Defendants claim that Harvey's

job performance was in fact poor, and that Harvey has not offered

any evidence of discriminatory intent on the part of any

defendant.  Because Harvey has not offered sufficient evidence to

create a genuine issue of material fact, defendants' motion for

summary judgment on Harvey's discrimination claim is granted.

In McDonnell Douglas Corporation v. Green, the Supreme Court

established an "allocation of the burden of production and an

order for the presentation of proof in Title VII cases."  411

U.S. 792, 802 (1973).  Under that framework, a plaintiff

alleging a violation of the federal anti-discrimination statutes

establishes a prima facie case by showing he:  (1) was a member

of a protected class; (2) was qualified for the position he held;

(3) suffered an adverse employment action; (4) in circumstances

giving rise to an inference of discrimination.  See Schnabel v.

Abrahmson, 232 F.3d 83, 87 (2d Cir. 2000); see also Texas Dept.

Of Community Affairs v. Burdine, 450 U.S. 248, 253 (1985) ("The

plaintiff must prove by a preponderance of the evidence that she

applied for an available position for which she was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination.").  If the plaintiff establishes a prima facie case, the employer has the burden of articulating a "legitimate, nondiscriminatory reason" for the adverse employment action.  Stern v. Trustees of Columbia University, 131 F.3d 305, 312 (2d Cir. 1997).  If the employer does so, the plaintiff must prove by a preponderance of the evidence that the employer's proffered explanation is unworthy of credence, and that the true reason for the employer's action was unlawful discrimination.  See id.

Harvey cannot, as a matter of law, establish that defendants' actions were the product of unlawful discrimination.[3] The ultimate question in an employment discrimination case is whether the evidence offered can reasonably and logically give rise to an inference of discrimination under all of the circumstances.  See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 148 (2000);  Bickerstaff v. Vassar College, 196 F.3d 435, 448 (2d Cir. 1999).  Where the plaintiff's evidence

_____

[3] Defendants also contend that Harvey was not qualified to hold his position, and therefore cannot even establish a prima facie case of discrimination.  The court does not find for the defendants on this ground.  Because Harvey's burden when attempting to make out a prima facie case is de minimis, see McDonnell Douglas Corp., 411 U.S. at 802, the court cannot find that, as a matter of law, Harvey has failed to establish that he was qualified to hold the position of Lead Night Custodian.

barely establishes a prima facie case, the prima facie case alone

may not be sufficient to prove that it is more likely than not

that discrimination, not defendant's proffered explanation, was

the true motivation for the adverse employment action.  See

Reeves, 530 U.S. at 148 ("Certainly there will be instances

where, although the plaintiff has established a prima facie case

and set forth sufficient evidence to reject the defendant's

explanation, no rational factfinder could conclude that the

action was discriminatory."); Stern, 131 F.3d at 312.

Defendants have offered substantial evidence that Harvey's

employment was terminated because of performance issues.

Defendants' offer of proof in this regard significantly weakens

the persuasive effect of Harvey's prima facie case.  An

individual is qualified for purposes of establishing a prima

facie case when the employee's performance meets the employer's

legitimate expectations.  See Thornley v. Penton Publishers, 104

F.3d 26, 29 (2d Cir. 1997); Meiri v. Dacon, 759 F.2d 989, 998 (2d

Cir. 1985).  A plaintiff's "job performance cannot be assessed in

a vacuum; the ultimate inquiry is whether [the] performance

'meets his employer's legitimate expectations.'"  Meiri, 759 F.2d

at 995.  The record contains enough evidence to at least suggest

that Harvey was an incompetent supervisor during the relevant

time period, which limits the persuasive effect of his prima

facie offer of proof when weighed against defendants' proffered

reason for his demotion.  Cf. Mandell v. Suffolk County, 316 F.3d
368, 381 (2d Cir. 2003) (reversing grant of summary judgment in
favor of the employer when the employer's non-discriminatory
proffer was vague and unsubstantiated).

Harvey's evidence in support of his discrimination claim is
insufficient to prove illegal discrimination.  In support of his
claim that defendants' proffered reason for his demotion was a
pretext for discrimination, Harvey attempts to prove that Mark
harbored a bias against men in general, and that this bias
prompted her to unfairly scrutinize his work.  As evidence of
Mark's bias, Harvey offers the following evidence: (1) the fact
that his written performance reviews were satisfactory or better
prior to arriving at and subsequent to leaving Bulkeley High
School; (2) the fact that Mark assigned "unequal workloads and
burdened the male employees with unreasonable and oppressive job
assignments in a an effort to portray them as poor workers,"
(dkt. # 45 ¶ 9); (3) his observation that Mark "treats men more
harshly than she treats women, and that performance was not a
relevant basis for such treatment," (id. ¶ 10); (4) memoranda to
Mark and DelMonte disputing Mark's criticisms of his performance;
and (5) statements by two of his male co-workers that they "feel
that Ms. Mark discriminated against [us] and the other male
employees because we are male," (id., Ex. 8, Malave Aff. ¶ 6; see
id., Holton Aff. ¶ 6).  These statements are conclusory in that

they simply state the speaker's belief that Mark treated men differently.  No example, save a vague reference in Malave's affidavit to an incident where Mark instructed a female employee not to do an assignment allegedly because the employee was a woman, is provided about how Mark divided the workload in a discriminatory fashion between men and women.  Harvey has not provided any basis to conclude that Mark's motivation for criticizing Harvey was the fact that Harvey was a man.  As such, there is no evidence in the record for a factfinder to conclude that Mark's criticism of Harvey's work was the product of sex discrimination, and summary judgment must enter for the defendants on this claim.

### C.  EQUAL PROTECTION

Harvey argues that defendants violated his right to equal protection under the law by "intend[ing] to deprive Plaintiffs of his rights, privileges and immunities under federal law on the basis of his gender," (Compl. ¶ 25), and that "Defendants acted in pursuance of a systematic custom or policy of discriminating against or harassing male members of the Hartford Public School System," (id. ¶ 27).  Harvey's claim fails as a matter of law because he has not provided sufficient evidence in support of his claim.

The Fourteenth Amendment to the United States Constitution provides that "no state shall . . . deny to any person within its

jurisdiction the equal protection of the laws," and is

"essentially a direction that all persons similarly situated

should be treated alike."  City of Cleburne, Texas v. Cleburne

Living Center, 473 U.S. 432 (1985).  A plaintiff claiming denial

of equal protection rights can proceed according to several

theories:

> A plaintiff could point to a law or policy that
> "expressly classifies persons on the basis of race."
> [Hayden v. County of Nassau, 180 F.3d 42, 48 (2d Cir.
> 1999)] (citing Adarand Constructors, Inc. v. Pena, 515
> U.S. 200, 213, 227-29 . . . (1995)).  Or, a plaintiff
> could identify a facially neutral law or policy that
> has been applied in an intentionally discriminatory
> manner. See Yick Wo v. Hopkins, 118 U.S. 356, 373-74,
> 6. . . (1886).  A plaintiff could also allege that a
> facially neutral statute or policy has an adverse
> effect and that it was motivated by discriminatory
> animus.

Brown v. City of Oneonta, New York, 221 F.3d 329, 337 (2d Cir.

2000).  Further, the United States Supreme Court has recently

held that a plaintiff need not be a member of a traditionally

"protected class" in order to allege an equal protection

violation.  See Village of Willowbrook v. Olech, 528 U.S. 562,

564 (2000).  Instead, a "class of one" may maintain an equal

protection claim, as long as the plaintiff alleges that he or she

was treated differently than similarly situated persons.  See id.

In addition, the plaintiff must show that the different treatment

was intentional and had no rational basis in order to properly

allege an equal protection violation. See, e.g., Ricketts v. City

of Hartford, 74 F.3d 1397, 1407 (2d Cir. 1996).[4]  A government

official's decision "can be considered irrational only when [the

official] acts with no legitimate reason for [his or her]

decision."  Harlen Associates v. The Incorporated Village of

Mineola, 273 F.3d 494, 500 (2d Cir. 2001) (internal quotation

marks omitted).

Under either of the two theories that could possibly fit the

evidence offered,[5] Harvey cannot prevail on his equal protection

claim.  With respect to a selective prosecution theory,

> To succeed in an action alleging selective prosecution,
> plaintiffs in this Circuit ["]have been required to
> show both (1) that they were treated differently from
> other similarly situated individuals, and (2) that such
> differential treatment was based on impermissible
> considerations such as race, religion, intent to
> inhibit or punish the exercise of constitutional
> rights, or malicious or bad faith intent to injure a
> person.["]

Cobb v. Pozzi, 363 F.3d 89, 110 (2d Cir. 2004) (quoting Harlen

Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 499 (2d Cir.

2001)).  To the extent Harvey is proceeding under an Olech

---

[4] Prior to Olech, the Court of Appeals also required the
plaintiff to show malice or bad faith on the part of the
defendant in a selective treatment case.  See Giordano v. City of
New York, 274 F.3d 740, 751 (2d Cir. 2001).  In light of Olech,
however, it is unclear whether intentional conduct may be
sufficient alone to satisfy an equal protection claim.  See id.
For the purpose of deciding this motion, the court assumes that
intentional conduct is sufficient to state an equal protection
claim.

[5] Harvey does not specify a theory upon which he wishes to
proceed.

theory, Harvey must show that he was intentionally treated

differently from similarly situated individuals and that the

basis for this treatment was irrational, although not based on an

impermissible classification.  Harvey cannot prove that he was

treated differently from similarly situated individuals, which is

essential to prevailing on either theory.[6]  Harvey was a

supervisor of about nine employees; the record does not offer any

evidence as to how Mark treated a female supervisor.  Further, on

a more generic level, the record only contains conclusory

statements regarding Mark's treatment of male custodians compared

to her treatment of female custodians.  Therefore, Harvey cannot

show that defendants, either because of his sex or simply without

any rational basis, treated him differently than other similarly

situated employees.[7]

---

[6] To the extent Harvey proceeds on a selective prosecution
theory, his claim also fails because he cannot prove intentional
discrimination, as stated previously herein.

[7] Because the court finds that Mark, or any other individual
in the employ of the City of Hartford, did not violate the U.S.
Constitution, and Harvey's claims against the City of Hartford,
or any other purported principal of the agents named in this
lawsuit, are derivative of the claims against the agents,
Harvey's claims against the City of Hartford fail.  To the extent
his claims are not derivative of the agents' conduct, Harvey has
offered absolutely no evidence in support of his claims, which
must necessarily fail.

## III. CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment (dkt. # 36) is **GRANTED**.  Judgment for the defendants shall enter on all counts of the complaint.  The Clerk of the Court shall close this file.

So ordered this ____ day of January, 2005.

**/s/DJS**

_____
            **DOMINIC J. SQUATRITO
      UNITED STATES DISTRICT JUDGE**